Larry DOWNS, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE,
Respondent–Appellant.

No. SD 30908.

Missouri Court of Appeals,
Southern District,
Division Two.

May 25, 2011.

Rehearing Denied June 2, 2011.

Chris Koster, Attorney General, Trevor S. Bossert, Special Assistant Attorney General, Jefferson City, MO, for Appellant.

Timothy R. Cisar, Lake Ozark, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

The Director of Revenue ("the Director") appeals from the judgment of the Circuit Court of Camden County reinstating the driving privileges of Larry Downs ("Respondent") after the Director suspended Respondent's driving privileges for driving while intoxicated ("DWI"). The Director contends that the trial court erred in ruling evidence of the results of Respondent's breath alcohol test inadmissible.[1] We agree and reverse and remand.

---

1. Respondent did not submit a brief in this appeal, nor was he required to do so. *West v. Dir. of Revenue*, 297 S.W.3d 648, 650 n. 2 (Mo.App. S.D.2009). "There is no penalty for a respondent failing to file a brief, however, this Court is forced to adjudicate the Director's claim of error without the benefit of whatever argument [Respondent] might have raised." *Colhouer v. Dir. of Revenue*, 283 S.W.3d 284, 286 n. 3 (Mo.App. S.D.2009).

## Facts

On April 10, 2010, Respondent was arrested for DWI and submitted to a breath alcohol test that registered his blood alcohol content ("BAC") as .153. Based on the results of that test, the Director suspended Respondent's driving privileges for one year, pursuant to section 577.041,[2] and Respondent filed a petition for review in the Circuit Court of Camden County. The case was submitted to the circuit court on the Director's certified records, and the written objections and arguments of counsel. At trial, Respondent objected to the admission of the Missouri Department of Health and Senior Services ("DHSS") Datamaster's maintenance report and the breath test results because on January 30, 2007, then-governor, Matt Blunt, signed and filed Executive Order 07–05 (the "2007 Order") transferring all authority and duties of DHSS as to the Breath Alcohol Program (the "Program") to the Missouri Department of Transportation ("MoDOT"), but the DHSS would still maintain the Datamaster's maintenance records. The trial court found that the results of the breath test and the breathalyzer's maintenance records, which were maintained by DHSS, were inadmissible because of "the failure of [MoDOT] to adopt the necessary rules and regulations to carry out its duties under the [P]rogram. . . ." The trial

court entered judgment in Respondent's favor and reinstated Respondent's driving privileges.

## Background

The 2007 Order signed by Governor Blunt provides, in part:

NOW, THEREFORE, I, MATT BLUNT, GOVERNOR OF THE STATE OF MISSOURI . . . do hereby order the [DHSS] and [MoDOT] to cooperate to:

1. Transfer all the authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of the [Program] from the [DHSS] to [MoDOT], by Type I transfer, as defined under the Reorganization Act of 1974;[3] and

2. Develop mechanisms and processes necessary to effectively transfer the [Program] to [MoDOT]; and

3. Transfer the responsibility for staff support for the [Program] from [DHSS] to [MoDOT]; and

4. Take the steps necessary to maintain compliance with federal requirements, so as not to jeopardize federal financial participation with this consolidation.

**2.** All references to statutes are to RSMo Cum. Supp.2009, unless otherwise specified.

**3.** Section 1, subsection 7(1)(a) of the Omnibus State Reorganization Act of 1974 reads:

Under this act a "type I transfer" is the transfer to the new department or division of all the authority, powers, duties, functions, records, personnel, property, matters pending and all other pertinent vestiges of the existing department, division, agency, board, commission, unit, or program to the director of the designated department or division for assimilation and assignment within the department or division as he shall determine, to provide maximum efficiency, economy of operation

and optimum service. All rules, orders and related matter of such transferred operations shall be made under direction of the director of the new department.

(emphasis in original). As noted by the court in *Schneider v. Director of Revenue*, 339 S.W.3d 533 (Mo.App.E.D.2011), "[t]he Omnibus State Reorganization Act of 1974 'has never been assigned a section number within any official statutory compilation since its passage, including RSMo 2000.'" *Id.* at 537 n. 6 (quoting *State ex rel. Dep't of Soc. Servs., Family Support Div. v. K.L.D.*, 118 S.W.3d 283, 288 n. 11 (Mo.App. W.D.2003)). The statute is set out beginning on page 9392 of Volume 15 of RSMo 2000 as Appendix B.

(footnote added). According to the 2007 Order, the "Order shall become effective no sooner than August 28, 2007[.]" The 2007 Order describes the Program as being "responsible for performing on-site inspection of breath analyzers, as well as, approving permits to operate and maintain evidential breath analyzers; permits to analyze blood, urine and saliva for drugs; and courses to instruct permit holders in the use of breath analyzer equipment[.]"

On September 12, 2008, Governor Blunt issued Executive Order 08–29 (the "2008 Order") in an effort to reverse the transfer process initiated by the 2007 Order. The 2008 Order stated that "unforeseen administrative issues with the transfer made by [the 2007 Order] has made the transfer inefficient and not cost effective" and indicated that "[DHSS] continues to administer [the Program]." The 2008 Order mandated that MoDOT transfer all powers to administer the Program back to DHSS. However, the 2008 Order was ineffective because it was submitted during a special session of the legislature, rather than a regular session.

On January 29, 2010, Governor Jay Nixon issued Executive Order 10–15, which explained the 2007 Order provided for the transfer of the Program from DHSS to MoDOT, however, "unforeseen administrative issues made the transfer inefficient and not cost effective." Executive Order 10–15 declared that "[DHSS] has the necessary expertise to administer [the Program]" and ordered MoDOT transfer all powers to administer the Program back to DHSS. This reorganization plan reversed the 2007 Order and became effective August 28, 2010.

## Argument

Respondent raised four objections to the admissibility of the Datamaster's maintenance report form, and the results of the breath test, in his written objections at trial: (1) under the 2007 Order, DHSS did not have the authority to issue permits to maintain and/or operate the Datamaster when DHSS issued permits to Officers Skinner and Boren; (2) when the responsibility for the Program was transferred to MoDOT, MoDOT failed to approve satisfactory methods related to breath alcohol testing, failed to establish standards to ascertain the qualifications and competence of individuals to conduct breath alcohol testing analyses and to issue permits, and failed to enact any rules or regulations whatsoever governing any of these functions, and the failure to perform those functions, violated the requirements of sections 577.020–577.041, particularly sections 577.020.3–.4 and 577.026.1–.2; (3) the statutory scheme contained in sections 577.020–577.041, and the rules and regulations required to be adopted pursuant to that scheme, serve as the exclusive means by which the Director may offer the results of a breath test obtained by a law enforcement officer in an action to suspend or revoke a driver's license pursuant to sections 302.500 *et seq.;* and (4) Respondent did not impliedly consent under section 577.020 to submit to a breath test because the statutory scheme was not complied with.

The Director brings three points on appeal. The Director contends that the trial court misapplied the law in excluding the evidence of Respondent's breath test results and the Datamaster's maintenance records because: (1) the reorganization ordered by the 2007 Order did not take place and, therefore, DHSS remains the agency empowered to run the Program; (2) only the governor has the standing to enforce an executive order through mandamus; and (3) even if the reorganization ordered by the 2007 Order did take place, the existing DHSS rules remained effective and unchanged. We find merit to the Director's claims.

## Standard of Review

■ The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010).

## Analysis

■ The Eastern District in *Schneider*, 339 S.W.3d 533, and the Western District in *State v. Ross*, No. WD71872, 344 S.W.3d 790 (Mo.App.W.D.2011), have recently addressed the issue of whether breath test results were admissible in a suspension-of-driving-privileges case and a DWI criminal case, notwithstanding the 2007 Order. We find their reasoning persuasive and binding upon this Court. The analysis in *Ross* is congruent with the analysis in *Schneider*. We use the decision in *Schneider* to explain our analysis.

In *Schneider*, the Director suspended Schneider's driving privileges based on the results of a breath test administered to Schneider. 339 S.W.3d at 533–35. Schneider filed a petition in the circuit court for a trial *de novo* contesting the suspension. *Id.* The Director and Schneider stipulated "that the sole contested issue was the admissibility of Schneider's breath alcohol test results." *Id.* Schneider filed written objections to the admission of his breath alcohol test results, "contending that he did not impliedly consent to his breath alcohol test because the test failed to comply with Sections 577.020–577.041." *Id.* Schneider argued that "his breath alcohol test failed to comply with Sections 577.020–577.041 because

[the officer who administered the breath test] did not possess a permit issued by [MoDOT] and MoDOT had not approved methods for administering breath alcohol tests." [4] *Id.* More specifically, Schneider argued that the 2007 Order "transferred DHSS's responsibilities under Sections 577.020–577.041 to MoDOT prior to his breath alcohol test." *Schneider*, 339 S.W.3d at 535. The trial court overruled Schneider's written objections, admitted the results of the breath alcohol test, and entered its judgment upholding the Director's suspension of Schneider's driving privileges. *Id.* at 535–36.

On appeal, Schneider argued that that the trial court erred in admitting the results of his breath alcohol test because "DHSS's responsibilities for the [Program] transferred to MoDOT on August 28, 2007." *Schneider*, 339 S.W.3d at 535. Schneider further argued that because the officer who administered the breath test "did not possess a MoDOT-issued permit and, subsequent to August 28, 2007, MoDOT failed to approve methods for conducting breath alcohol tests, his test did not comply with Sections 577.020–577.041 (specifically, Sections 577.020.3, .4, 577.026.1–.2, and 577.037) and is therefore inadmissible." *Id.* "Schneider asserted that his position was supported by: (1) language of the 2007 Order; (2) sections 26.500–26.540, which authorize a governor to transfer agency functions via executive order; (3) subsequent executive orders directing MoDOT to transfer the Program to DHSS; and (4) subsequent agreements between DHSS and MoDOT that DHSS would continue to administer the Program." *Id.*

4. "Sections 577.020 and 577.026 direct DHSS to issue permits and approve methods for breath alcohol testing and require that a person performing a breath alcohol test pos-

sess a DHSS permit and act pursuant to DHSS's methods." *Schneider*, 339 S.W.3d at 534.

*Schneider* resolved the issue by reviewing the language of the 2007 Order; the Court noted that Governor Blunt directed DHSS and MoDOT "to *cooperate to*" transfer the "pertinent vestiges" of the Program. *Id.* at 536–37. In so noting, the Court reasoned that the language of the 2007 Order contemplated a gradual effort resulting in DHSS's transfer of the operation of the Program to MoDOT. *Id.* The Court concluded that an executive order requiring two agencies "to cooperate to ... develop mechanisms and processes to effectively transfer" the operation of the Program "cannot be logically construed to immediately transfer the operation of the [Program] on a certain date...." *Id.* Significantly, the court found the language of the 2007 Order described what was to be transferred to the new department or division, not *when* the transfer occurred. *Id.* As such, and with the subsequent revocation of the order, DHSS had the authority to operate the Program at the time of Respondent's arrest.

The Director's position has merit. Because the evidence was improperly excluded on the basis of a misapplication of the law, we reverse the trial court and remand for further proceedings not inconsistent with this opinion.

SCOTT, C.J. and FRANCIS, J. Concur.